## FRANK WARD

### *v.*

### ISABELL MEREDITH.

*Opinion filed February 21, 1906.*

1. INSTRUCTIONS—*instruction in substantial language of a statute is proper.* An instruction stating that in an action to recover damages caused· by running an automobile in the public highway "at a greater rate of speed than fifteen miles per hour, the plaintiff is deemed to have made out a *prima facie* case by showing the fact that he or she has been injured, and that the person running such automobile, either by himself or his agent, was at the time of the injury running the same at a speed in excess of fifteen miles per hour," is substantially in the words of the statute, and is proper.

2. AUTOMOBILES—*duty of driver of an automobile to stop when a horse is frightened.* Section 2 of the Automobile act of 1903, (Laws of 1903, p. 301,) requiring the driver of an automobile to stop "whenever it shall appear that any horse driven or ridden by any person upon any of said streets, roads or highways is about to become frightened," means that such driver should stop when a horse is frightened or shows indications of fright when the automobile is approaching him.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Winnebago county; the Hon. ARTHUR H. FROST, Judge, presiding.

CHARLES W. FERGUSON, and E. H. MARSH, for plaintiff in error.

F. H. SMITH, and R. K. WELSH, for defendant in error.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is an action on the case, brought in the circuit court of Winnebago county by defendant in error, against plaintiff in error, to recover damages for a personal injury. Upon a trial before the court and a jury a verdict was returned in

favor of the defendant in error against the plaintiff in error for $2000, and judgment was entered thereon. On appeal to the Appellate Court for the Second District that judgment has been affirmed, and this writ of error is now prosecuted.

The declaration consists of four counts, the first and second of which charge the plaintiff in error with negligence in running and managing a certain automobile. The third charges him with running his automobile at a rate of speed in excess of fifteen miles per hour, as limited by the statute, and the fourth charges him with frightening a horse hitched to a buggy, driven by the husband of the defendant in error, in which she was riding, and in refusing to stop his automobile, as required by the statute.

The facts are few and in the main undisputed. On April 23, 1904, while the defendant in error and her husband were on their way to the city of Rockford, riding in a top buggy drawn by a horse, they met plaintiff in error and a party of friends in a large, two-seated, canopy-topped automobile on the public highway, and the horse became frightened at the approaching automobile and ran off the grade into a ditch, overturning the buggy and throwing defendant in error and her husband out upon the ground, the fall resulting in a fracture of both bones of defendant in error's right arm and inflicting other injuries upon her.

It is not denied that the evidence fully sustained the verdict and judgment of the trial court if no errors of law were committed upon the trial. The errors assigned question the ruling of the court in giving and refusing instructions and in the admission of certain evidence.

The first given instruction complained of is as follows:

"The court instructs you that in an action brought to recover damages, either to the person or property, caused by running an automobile propelled by mechanical power in the public highway at a greater rate of speed than fifteen miles per hour, the plaintiff is deemed to have made out a *prima facie* case by showing the fact that he or she has been in-

jured, and that the person running such automobile, either by himself or his agent, was at the time of the injury running the same at a speed in excess of fifteen miles per hour."

It is claimed that this instruction is vicious and misleading for the reason that it ignores the question as to whether or not the injuries sustained were occasioned by the running of the automobile in excess of fifteen miles per hour. Section 4 of chapter 121 (Hurd's Stat. 1903, p. 1630,) provides that in any action brought to recover damages, either to person or property, caused by running an automobile at a greater rate of speed than fifteen miles per hour, the plaintiff shall be deemed to have made out a *prima facie* case by showing the fact of such injury and that such person driving such automobile was at the time of the injury running the same at a speed in excess of fifteen miles per hour. This section of the statute and the foregoing instruction are in substantially the same language. We have held in many cases that no error is committed by giving an instruction in the substantial language of a statute; that the instruction must be regarded as sufficient when it lays down a rule in the words of the law itself. *Kellyville Coal Co.* v. *Strine,* 217 Ill. 516; *Donk Bros. Coal and Coke Co.* v. *Peton,* 192 id. 41; *Mount Olive Coal Co.* v. *Rademacher,* 190 id. 538; *Duncan* v. *People,* 134 id. 110.

But it is insisted that this instruction is not in the exact words of the statute because it contains the words, "either by himself or his agent." The addition of these words in no way changes the legal sense or meaning of the instruction.

The contention that the instruction ignores the question whether the injuries sustained were occasioned by the running of the automobile at excessive speed cannot be sustained. The first part is: "The court instructs you that in any action brought to recover damages, either to the person or property, caused by running an automobile propelled by mechanical power in a public highway at a greater rate of speed than fifteen miles per hour," etc. This language is

explicit, and tells the jury that the injury sustained must be caused by running the automobile at the prohibited rate of speed.

Complaint is next made of the sixth instruction given on behalf of the defendant in error. It is based upon section 2 of chapter 121, *supra,* which provides that whenever it shall appear that any horse driven or ridden by any person upon any street, road or highway is about to become frightened by the approach of any such automobile or vehicle, it shall be the duty of the person driving or conducting such automobile or vehicle to cause the same to come to a full stop until such horse or horses have passed. The instruction informed the jury that if the plaintiff in error, by himself or agent, was running or driving the automobile in question, and that the horse which was drawing the buggy in which defendant in error was riding "became frightened or showed that it was about to become frightened" by the approach of such automobile, and that said plaintiff in error either knew that fact or by the exercise of ordinary care and diligence might have known that fact, then it was his duty to cause such automobile to come to a full stop until such horse had passed such automobile. It is insisted that the instruction is inaccurate in that the statute upon which it is based does not provide that "if a horse becomes frightened by the approach of an automobile," etc., but that its language is, "about to become frightened by the approach," etc., the contention, in substance, being, that the statutory requirement is to stop the automobile only where the horse is about to become frightened, and not where it has already become frightened. This criticism is, in our opinion, entirely too refined. Just when a horse is about to become frightened and when he is actually frightened is very difficult to determine, and we think the plain meaning of the statute is to require persons using such vehicles as automobiles, calculated to frighten horses, to stop the same whenever a horse shows indications of fright upon their approach. Any other construction would render

it difficult, if not impossible, to give it practical effect. The evidence in this record tended to show that when the horse attached to the buggy in which the defendant in error was riding became frightened at the approach of the machine, the plaintiff in error did not comply or attempt to comply with section 2, *supra,* but went by the horse and buggy at a high rate of speed, estimated by the witnesses at from twenty-five to thirty miles an hour, and that he even failed to stop after the occupants had been thrown from the buggy.

We held in *Christy* v. *Elliott,* 216 Ill. 31, that the language of said section 2, "whenever it shall appear that any horse," etc., is about to become frightened, means whenever it might, by the exercise of reasonable diligence, appear to the driver of the automobile that the horse was about to become frightened it would be his duty to stop; that while the owner of the automobile has a right to use the highways of this State with the same, he must use reasonable care and caution for the safety of others and not violate the law of the State. In other words, one using an automobile upon public highways of the State cannot shut his eyes to the situation and then say it did not appear to him that a horse or horses were about to become frightened at his approach. He must use reasonable care and diligence to discover that fact.

This is not a case, as seems to be argued by counsel for plaintiff in error, in which he is charged with mere negligence. The action is based upon a violation of the statute. It is also to be observed that the instruction in question does not contemplate a case in which a horse becomes suddenly frightened as the automobile is about to pass him, thereby causing an emergency in which the automobile driver might determine the best means of avoiding injury, as contended by the plaintiff in error, but the language is, "became frightened or showed that it was about to become frightened by the approach of such automobile, as the same was approaching said horse," etc. Under the conditions named in the instruction the plaintiff in error had no discretion as to what he

should do. It was his duty, by the express language of the statute, to immediately stop his automobile.

In our examination of the instructions given on behalf of the plaintiff in error we have been impressed with the fact that they fully cover the law of the case applicable to the facts and give him the benefit of every defense upon which he could legally insist. But one instruction asked on his behalf was refused, and it attempted to lay down the rule as to want of ordinary care on the part of the husband of the defendant in error as contributing to the injury. Conceding that it announced correct principles of law, the refusal worked no injury to the plaintiff in error for the reason that it was covered by others given.

The husband of defendant in error testified in her behalf that the horse became frightened or showed fright when the automobile was within a distance of a dozen rods of it, and it is objected that this evidence was improper because it was the statement of a mere conclusion. We are at a loss to perceive how this position can be seriously upheld. Whether or not a horse has become frightened or shows fright is a fact—not the statement of a conclusion.

This case involves principles of the first importance to those using automobiles and like vehicles on the public roads and to the traveling public generally, and while we are not disposed to circumscribe or limit the rights of the former beyond the requirements of the statute, we entertain no doubt that the facts in the record bring the plaintiff in error clearly within its restrictions and make him liable for the injury inflicted upon the defendant in error.

The judgment of the Appellate Court will accordingly be affirmed.                              *Judgment affirmed.*